Marston, J.:
It is utterly impossible ■ to reconcile the testimony of complainant and her husband in this case with that of defendant Wool. Courts are very reluctant in coming to the conclusion that a witness has willfully given false testimony in a case; they much prefer to attribute all seeming or real discrepancies to the uncertainties of recollection, or some other cause consistent with honest intentions. In this case these witnesses are diametrically opposed to each other in every essential particular, and this in reference to matters *about which they could not be mistaken or have forgotten, so that, however charitably disposed we might be, yet we could not harmonize or make consistent the testimony of defendant Wool with that of complainant and her husband. Complainant and her husband were not residing together. He was about to go away, and claiming an interest in certain property, she concluded to secure it in some way for herself and for the benefit of their child, who was living with her. She applied to defendant Wool, an attorney, with whom she seems to have been quite intimate, and upon his advice wrote to her husband that she wanted to see him. Her husband came as requested, and she told him that she wanted to purchase the property, but as she could not tell him how much money she could raise for him, he agreed to call again. She then had an interview with defendant Wool, who told her to offer anything less than two hundred dollars for the property, and agreed to loan or furnish her with the money. On her husband’s return, she offered him one hundred and seventy-five dollars for the property. He told her this was a small sum, but in consideration *419 of his child he would take it, and agreed to and did return the next day to close the transaction. The next day they met; she then went to Wool’s office to have a deed drafted, which was done, and read over to her by defendant Wool. She was then directed to get her husband and go to Minoek’s office to have this deed executed; she went and got her husband and they went to Minock’s office, where shortly afterwards Wool came with the deed, when it was executed and Wool took it for the purpose of having it recorded. Before signing, her husband examined the deed and found that she was the grantee therein named, and it was then signed by both parties, she being informed by the notary that as a matter of form she should sign it. A second paper was then signed also, which complainant and her husband supposed was a duplicate, they supposing it necessary and according to custom to execute such instruments in duplicate. A check signed by defendant Prentis, payable *to the order of Oliver C. Bellair, Jr., for one hundred and seventy-five dollars, was then handed to Mr. Bellair, upon which the money was drawn the same day and fifteen dollars of it given to complainant. Complainant afterwards had her suspicions aroused in regard to this deed and called upon defendant Wool, who assured her that everything was correct and that she owned the property. In the month of August or September following, she went to the register’s office and found a deed upon record from her husband to defendants Wool and Prentis of the property in question, and upon then calling on Wool and informing him of the discovery she had made, he told her she had no interest in the property, having joined in a conveyance of it to defendants. Such is the testimony in substance of complainant.
Defendant Wool denies having, purchased or agreed to purchase these premises for complainant, or of having loaned or agreed to loan her any money for such purpose. He says there was but one deed drafted or executed and that, the deed to defendants; that when drafted on the 18th day of August it was handed to her. to be executed, and that he did not see it again until after it was executed on the 19th; that he was pres *420 ent when this deed was executed, or shortly afterwards, and handed complainant his check for one hundred and seventy-five dollars, and her husband defendant Prentis’ check for a like a amount, and that upon the afternoon of the same day, having no funds in the bank to meet his check, he, at his office, paid complainant thereon one hundred and twenty-five dollars and took her receipt endorsed on the back of the check therefor, and afterwards paid certain rent for her and also made payments on a sewing machine for her benefit, and in this manner paid the balance of the check. Minock corroborates defendant as to what took place at his office. The testimony of Oliver C. Bellair agrees with that given by complainant, and is contradictory of defendant Wool and Minock. The testimony of complainant and her husband is very full, clear and satisfactory. The discrepancies between them are *nothing more than might be expected where witnesses attempt to give a truthful and honest account of the same transaction.
The testimony of defendant Wool does not make a favorable impression, even with the testimony of Minock to partially corroborate it. The expressions contained in the letter which he introduces and testifies he received from complainant, but which she denies wx-iting, are equally consistent with complainant’s as with defendant’s theory. The receipt for one hundred and twenty-five dollars on the back of defendant Wool’s check, complainant denies having signed, and her signature is not proven satisfactorily; she also denies ever having received this check, or received a dollar from defendant Wool, and there is no evidence except that of Wool himself, tending to show that he ever paid to her or for her benefit a single dollar which could be applied upon this check or in payment for this property. The evidence introduced, in so far as it goes, shows the property to be worth four thousand dollars, that Oliver 0. Bellair offered to sell it to his wife for eight hundred and fifty dollars, — the consideration in the deed was one thousand dollars, — while the consideration according to defendant’s theory, was only three hundred and fifty dollars. There is nothing in the case tending to show that Oliver 0. Bellair was com *421 pelled to, or had been endeavoring to, sell this property, or if he had, why he should have sold it to defendant for an amount so much below its actual value. True, defendant .claims that his title or interest in the property was a contingent one, that he claimed the property under a will from his mother, dividing it among her surviving children, when her youngest child should attain the age of twenty-one, but there was no evidence tending to show the age of this youngest child at the date of this conveyance. It does not appear therefore that this materially lessened the value of his interest. The complainant was the wife of Oliver 0.; he was about to go away; she applied to him to purchase the property, offering him one hundred and seventy-five dollars therefor, as being all *she could raise. According to Oliver C.’s testimony, he told her “this is a very poor consideration for such a large amount of property as I am disposing of, but, nevertheless, I will let it go if you will promise me at a further period you will give me one-half of it, if I require it, — deed one-half of it back to me, and take good care of my child. She promised me faithfully she would.” (Wool was inside and heard this.) This is altogether more probable than defendant’s theory. It is consistent, and it is but natural to suppose that he should be willing to let his wife have the property at much less than its real value, for her benefit and that of their child. There are other circumstances in this case tending to the same conclusion, but we need not further pursue them, as they could only be of interest to the parties in this case.
It but remains to consider the legal objections to the relief sought.
I. That Oliver C. Bellair and not complainant should have filed this bill. We see no force whatever in this. He agreed to and supposed he was conveying this property to complainant, but on account of the fraud practiced upon him the conveyance executed was to other parties. A reconveyance to him would not place the title where it was intended to be, in complainant. She would still be under the necessity of instituting proceedings in case Oliver should refuse to convey. Nor can she be obliged to wait his taking steps to set aside this deed. *422 She is the party defrauded and has a right to come into a court of equity and file a bill in her own name to put her in the position she would have been in had no fraud been practiced.
II. It is claimed that as defendant Prentis purchased and paid for this property in good faith, he is entitled to protection, at least to the amount paid by him, which should be refunded. There are two sufficient answers to this. In the first place it is not at all clear that complainant supposed she was borrowing money from defendant Wool, and she had no communication with defendant Prentis. She *claimed he, Wool, was owing her, but if we view it as a loan, there was no agreement to give any security, or as to when it should be repaid. And in the second place Prentis purchased and advanced his money at the request of, and upon representations made by Wool, and the complainant in this case is neither legally nor equitably bound to indemnify him for the false and fraudulent conduct of the party through whom he acted. She never authorized Wool to apply to Prentis either to purchase this property or to loan her money, nor did she suppose she was borrowing money from him, and she is therefore under no obligation to repay him. We have no doubt but that Mr. Prentis acted in the utmost good faith in the premises, but his remedy is against the party who defrauded him, and not against this complainant. If he insisted in retaining this property after being informed of the fraud, he could not, on being defeated, ask the court to compel complainant to make good his losses.
The decree of the court below must be reversed, with costs, and a decree entered in favor of complainant, in accordance with this opinion.
The other justices concurred.